UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALT CITY STEEL LLC,<br><br>PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>DEFENDANTS. | CASE NO.: 1:25-cv-12712 |

## COMPLAINT

Plaintiff, Salt City Steel LLC ("SCS" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A, attached hereto (collectively, "Defendants"), which use at least the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338, and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants, in that Defendants conduct business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit, of which Defendants stand accused, were undertaken in Illinois and within this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the United States, including Illinois, through the fully interactive,

Defendant Internet Stores. Defendants are committing tortious acts, engaging in interstate commerce, and have wrongfully caused substantial injury in the State of Illinois.

## JOINDER

4. Joinder is proper pursuant to Federal Rules of Civil Procedure 19 and 20(a)(2), as the same ownership likely exists across the Defendant Internet Stores, Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all defendants will arise in the action.

5. Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Seller Aliases including the defendant store names and online marketplace accounts found to be selling infringing products. However, the true identities of the defendants – *i.e.*, the individuals and/or entities operating the Seller Aliases – are not yet known.

6. In Plaintiff's experience, a significant number of Seller Aliases included in the Schedule A are operated by the same individual and/or entity. It is not until the third-party marketplaces produce the registration data for these stores that the Plaintiff may discover the identity or identities of the individuals and/or entities operating the online marketplace accounts.

7. Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individual and/or entity, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

INTRODUCTION

8. This action has been filed to combat the online copyright infringement activity of Defendants, who trade upon Plaintiff's valuable copyrights by selling and/or offering for sale unauthorized products in connection with Plaintiff's federally registered copyrights.

9. Plaintiff, Salt City Steel LLC, is the owner of multiple copyright registrations, images of which are shown in the table below, and are attached hereto as **Exhibit 1** (collectively referred to herein as "PM Copyrights").

| COPYRIGHTED IMAGES | | |
|---|---|---|
| **SCS-1** | **SCS-2** | **SCS-3** |
| VA2441999 April 16, 2025 | VA2441999 April 16, 2025 | VA2441999 April 16, 2025 |
| *[image]* | *[image]* | *[image]* |
| **SCS-5** | **SCS -6** | **SCS - 7** |
| VA2441999 April 16, 2025 | VA2441999 April 16, 2025 | VA2441999 April 16, 2025 |
| *[image]* | *[image]* | *[image]* |



10. In an effort to deceptively profit from the PM Copyrights, Defendants utilize online marketplace accounts intentionally designed in look, feeling, and suggestion to give the impression to consumers that they are legitimate websites selling products manufactured by or authorized by SCS, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing

4

infringing products, which are marketed and promoted using PM Copyrights (hereinafter referred to as "Infringing Products").

11. Plaintiff has been and continues to be irreparably damaged through loss of control over the creative content protected by its valuable PM Copyrights and loss of exclusivity over the PM Copyrights, among others, as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

12. SCS is a amall family owned metal fabrication business, with its promary offices located at 319 Fenton Ave., South Salt Lake City, Utah, 84115.

13. SCS is the official manufacturer and retailer of an innovative equal spacing layout tool designed for ornamental iron fabrication, called the "Picket Master Pro" (the "PM Products"). This tool streamlines the layout of picket spacing for gates, railing, fences, and stitch welds, enhancing efficiency and precision in metalworking projects. Each PM Product is meticulously handcrafted by the Plaintiff, in South Salt Lake, Utah, ensuring top-notch quality and durability. The PM Products have become a staple in SCS shop and many other shops all over the world.

14. The PM Copyrights consist of multiple photographs of the PM Products. The following are examples of PM Copyrights being used in connection with genuine PM Products:



**AUTHENTIC PM PRODUCTS**

| **AUTHENTIC PM PRODUCTS** |
|:---:|
|  |

15. SCS owns the exclusive rights to develop, manufacture, distribute, license, sell, promote and otherwise use goods and services of every kind and nature based upon or derived from the PM Copyrights.

16. SCS has invested substantial time, money, and resources into promoting PM Products. The success of PM Products is due in large part to the marketing, promotional, and distribution efforts of SCS. These efforts include a direct-to-consumer marketing strategy, primarily using its website, https://www.saltcitysteel.org, and social media platforms like TikTok and Instagram.

17. The success of the PM Products is also due to the quality of the PM Products which are made using high-quality materials.

18. As a result of the efforts of SCS, the quality of the PM Products, the promotional efforts for its products and designs, and marketing, members of the public have become familiar with the PM Products and the PM Copyrights, and associate them exclusively with SCS. As such, the recognition and goodwill associated with the PM Products and PM Copyrights are of incalculable and inestimable value to the Plaintiff.

19. SCS has made efforts to protect its interests in and to the PM Copyrights. SCS is the only business and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the PM Copyrights.

20. Plaintiff has not licensed or authorized Defendants to use the PM Copyrights.

6

## THE DEFENDANTS

21. Defendants are individuals and business entities whose true identities are unknown and often concealed with unverified, incomplete, or false business names, addresses, and contact information. Upon information and belief, all Defendants reside in foreign jurisdictions.

22. Defendants operate fully interactive commercial websites and online marketplace accounts utilizing the following marketplace platforms: Alibaba Group Holding. Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon, Inc. ("Amazon"), eBay, Inc. ("eBay"), Shopify Inc. ("Shopify"), WhaleCo, Inc. d/b/a Temu ("Temu"), and Walmart, Inc. ("Walmart"), among others (collectively referred to herein as "Online Marketplaces").

23. On information and belief, infringers, such as Defendants, operate numerous online marketplace accounts and/or e-commerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

24. Each Defendant Internet Store is using and/or has used the PM Copyrights without authorization to do so, in connection with offering for sale, selling, marketing, and distributing Infringing Products, in direct competition with Plaintiff.

25. Defendants target the United States, including Illinois, and have offered to sell and, on information and belief, have sold and continue to sell Infringing Products to consumers within the United States and this Judicial District.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

26. Defendants are using the PM Copyrights, without authorization, to promote Infringing Products. Specifically, the Defendants are displaying the images protected by the PM Copyrights on their Infringing Product listings.[1] Below is just one example of such infringement:



27. Defendants' Infringing Products are intentionally designed to look identical or similar to genuine PM Products. Both Plaintiff and Defendants advertise and sell their products using the PM Copyrights, in the same area and in the same manner, via the Internet, and during the same timeframe.

---

[1] Some Defendants, such as the Defendant associated with the Defendant Internet Store in the Infringing Product listing example, are also using Plaintiff's common law trademark "Picket Master" which leads to consumer confusion and creates a false association with the Plaintiff.

8

28. Defendants' use of the PM Copyrights in connection with Infringing Products, which are identical in appearance to authentic PM Products, but much lower in quality and cheaper in price, is drawing would-be consumers of Plaintiff's authentic PM Products away from the Plaintiff and to the Defendant Internet Stores.

29. Potential consumers have difficulty distinguishing between authentic PM Products and Infringing Products, as evidenced by the number of emails received by Plaintiff from consumers who accidentally purchased Infringing Products believing that they were purchasing PM Products. Plaintiff receives approximately ten (10) of these such emails per week wherein consumers express their dissatisfaction with the poor quality and delayed shipping times associated with the Infringing Products.

30. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $509 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

31. As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing products on the above-mentioned digital Online Marketplaces, among others, an

---

[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

32. Upon information and belief, Defendants operate in a collective and organized manner, often monitor intellectual property infringement litigation alert websites, utilize online chat platforms and groups, and use collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

33. There are numerous similarities among the Defendant Internet Stores suggesting that they are interrelated, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) identical or nearly identical Infringing Products; and, (3) common features such as use of the accepted payment methods, check-out methods, lack of contact information, identically or similarly priced items, and the use of the same text and images.

34. Defendants may conceal their identities when registering their Defendant Internet Stores by: (1) using fictitious names and physical addresses which are incomplete, contain randomly typed letters, or fail to include cities and other relevant information; (2) using privacy services that conceal the owners' identity and contact information; and (3) creating multiple online marketplace accounts on various platforms using the Seller Aliases as well as other unknown

---

[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.
[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

fictitious names and addresses. This is done with the intention of concealing their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

35. Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts (the "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts.

36. Defendants, without any authorization or license, have knowingly and willfully infringed the PM Copyrights in connection with the advertisement, distribution, offering for sale, and sale of illegal, and infringing products into the United States and Illinois.

37. In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to the Plaintiff: infringed upon and copied the PM Copyrights; created, manufactured, sold, and/or offered to sell Infringing Products; and unfairly and unjustly profited at the expense of the Plaintiff.

38. Unless enjoined, Defendants will continue to cause irreparable harm to SCS.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

39. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-38 as if fully set forth herein.

40. The PM Copyrights are the subject of multiple valid copyright registrations.

41. Plaintiff, at all times, has been the holder of the copyright registrations and the exclusive rights of and belonging to Salt City Steel LLC, including but not limited to the PM Copyrights.

42. Upon information and belief, Defendants had access to the copyrighted work through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants

wrongfully created copies of the copyrighted work without Plaintiff's consent, and engaged in, and continue to engage in acts of widespread infringement.

43. Defendants, without the permission or consent of the Plaintiff, have sold, and continue to sell products which infringe upon Plaintiff's PM Copyrights. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §501 *et seq*.).

44. Further, as a direct result of the Defendants' acts of copyright infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's PM Copyrights. Plaintiff is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to said infringement.

45. As a result of each Defendant's infringement of Plaintiff's exclusive rights under U.S. Copyright Law, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

46. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily.

47. Plaintiff has no adequate remedy at law. As such, pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's PM Copyrights and ordering that each Defendant destroy all unauthorized and/or infringing copies and reproductions of Plaintiff's Copyrighted works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PM Copyrights or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized PM Product, or is not authorized by Plaintiff to be sold in connection with the PM Copyrights;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff in connection with the PM Copyrights; and,

   c. further infringing the PM Copyrights and damaging Plaintiff's goodwill.

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities such as domain name registrars, shall:

   a. disable and cease infringing product listings through which Defendants use the PM Copyrights and/or engage in the sale of products not authorized by Plaintiff which bear the PM Copyrights; and,

   b. take all steps necessary to prevent links to the infringing product listings from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. §501; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages pursuant to 17 U.S.C. §504, at the election of Plaintiff;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7) Any and all other relief that this Court deems just and proper.

Dated: October 17, 2025　　　　　　　　　Respectfully submitted,

*/s/ Alison K. Carter*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John Mariane

**SULLIVAN & CARTER, LLP**
111 W Jackson Blvd Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
a.carter@scip.law

***ATTORNEYS FOR PLAINTIFF***