UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALT CITY STEEL LLC,<br><br>    PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>    DEFENDANTS. | CASE NO.: 1:25-CV-12712<br><br>JUDGE ANDREA R. WOOD<br><br>MAGISTRATE JUDGE MARIA VALDEZ |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, Salt City Steel LLC ("SCS" or "Plaintiff"), submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, and expedited discovery ("TRO").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT ................................. | 1 |
| II. | STATEMENT OF FACTS ........................................................................... | 1 |
| | A. Plaintiff's Copyrights and Products ........................................................ | 1 |
| | B. Defendants' Unlawful Activities ............................................................ | 2 |
| III. | ARGUMENT ............................................................................................. | 3 |
| | A. Standard for Temporary Restraining Order and Preliminary Injunction .................. | 5 |
| |    i. Plaintiff Will Likely Succeed on the Merits. .......................................... | 5 |
| |    ii. There is no Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief ........................ | 7 |
| |    iii. The Balancing of Harms Tips in Plaintiff's Favor ................................. | 8 |
| |    iv. Issuance of the Injunction is in the Public Interest ............................... | 9 |
| IV. | THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .......................... | 9 |
| | A. Cessation of Defendants' Use of Plaintiff's Copyrights ........................... | 10 |
| | B. Restraint of Assets Associated with the Defendant Internet Stores .......... | 11 |
| | C. Expedited Discovery to Obtain Defendants' Contact Information and Sales Data ................ | 12 |
| V. | A BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......................... | 13 |
| VI. | CONCLUSION ......................................................................................... | 14 |

# TABLE OF AUTHORITIES

**CASES**

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) .................................. 12
*Burger King Corp. v. Majeed,* 805 F. Supp. 994 (S.D. Fla. 1992) ....................................................... 9
*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001) ................................................................................................................................ 6
*Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ................................................................................................................................................ 5
*Collectanea J. v. The P'ships, et al.*, No. 24-cv-03821, Dkt. [120] (N.D. Ill. 29 Oct. 24) (unpublished) 8
*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ..................................... 5
*CSC Holdings, Inc.* v. *Redisi*, 309 F.3d 988 (7th Cir. 2002) ............................................................. 13
*Decker's Outdoor Corporation v. The Partnerships, et al.*, No. 1:15-cv-03249, Dkt. [20] (N.D. Ill. April 22, 2015) (unpublished) ....................................................................................................... 14
*Deckert* v. *Independence Shares Corp.,* 311 U.S. 282 (1940) ........................................................... 13
*Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456 (7th Cir. 2000) ................................................. 8
*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) .......................................................................... 13
*Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) .......................... 12
*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) ......................................... 8
*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988) .................... 8
*JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007) ............................................... 6
*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D. D.C. 1994) ......................................... 9
*Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) ......................................................... 8
*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005). 12
*Madison Olsen v. The P'ships, et al*, No. 1:25-cv-06084, (N.D. Ill.) (Jul. 21, 2025) (unpublished) (unpublished) ............................................................................................................................... 11
*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms.Indus. Ass'n.*, 929 F. Supp. 473 (D. D.C. 1996). 9
*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) .................................... 8
*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) ............................................................... 13
*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808 (7th Cir. 2002) ....................................... 8
*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989) ......................................................... 14
*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424 (7th Cir. 2001) ............................................................ 8
*S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir.1989) ................................................ 6
*Stahfy, Inc.* v. *M.H. Jacobs Co.,* 183 F.2d 914 (7th Cir. 1950) ......................................................... 10
*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) ................................................... 6, 9
*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ..................... 13
*Warner Bros. Entertainment Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ...... 6, 7
*Warner Bros. Entm't, Inc.* v. *WTV Sys.,* 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ............................... 9
*Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ............................... 9
*Ziggy Zig Designs LLC v. The P'ships, et al.*, No. 1:24-cv-00908, Dkt. [23] (N.D. Ill.) (Mar. 28, 2025) (unpublished) ............................................................................................................................... 11

**STATUTES**

17 U.S.C. § 101 ..................................................................................................................................... 7
17 U.S.C. § 501 ..................................................................................................................................... 6
28 U.S.C. § 1331 ................................................................................................................................... 5

28 U.S.C. § 1367(a) ............................................................................................................................. 5
28 U.S.C. § 1391 ................................................................................................................................. 5
28 U.S.C. §§ 1338(a)-(b) ..................................................................................................................... 5
Fed. R. Civ. P. 26(b)(2) ..................................................................................................................... 13
Fed. R. Civ. P. 65(b) .................................................................................................................... 4, 10
Fed. R. Civ. P. 65(c) .......................................................................................................................... 14
Federal Copyright Act, 17 U.S.C. § 101, *et seq.* ................................................................................ 5

**MEMORANDUM OF LAW**

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is requesting temporary *ex parte* relief based on an action for copyright infringement, against the defendants identified on Schedule A to the Complaint (the "Defendants"). As alleged in the Complaint, Defendants operate fully interactive, ecommerce Internet stores under the online marketplace accounts listed on Schedule A (the "Seller Aliases" or "Defendant Internet Stores"), which infringe upon SCS' federally registered copyrights, (the "PM Copyrights"), by offering for sale and/or selling unauthorized and infringing products (the "Infringing Products").

Defendants conduct a sophisticated operation targeting Illinois residents by operating ecommerce stores using one or more Seller Aliases, through which Illinois residents purchase Infringing Products. A logical relationship exists between the Defendant Internet Stores, established by uniquely shared identifiers, such as design elements and similarities of the Infringing Products offered for sale, suggesting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

Plaintiff is forced to file this action to combat Defendants' infringement of its PM Copyrights, and therefore respectfully requests that this Court issue an *ex parte* Temporary Restraining Order ("TRO"), which would: (1) temporarily restrain Defendants' use of the PM Copyrights; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting; and, (3) authorize expedited discovery allowing Plaintiff to inspect Defendants' records relating to Infringing Products sold through the use of PM Copyrights.

II.     **STATEMENT OF FACTS**

    A.     **Plaintiff's Copyrights and Products**

Founded in 2007, Plaintiff, Salt City Steel LLC, is a small, family-owned metal fabrication business and is the only official manufacturer and retailer of an innovative equal spacing layout tool

1

designed for ornamental iron fabrication, called the "Picket Master Pro" (the "PM Products"). *See* the Declaration of Weston Spencer ("Spencer Decl.") at ¶ 4. The PM Products streamline the layout of picket spacing for gates, railings, fences, and stitch welds, enhancing efficiency and precision in metalworking projects. *Id.*

SCS is the copyright holder and owner of the federally registered PM Copyrights that cover photographs of the Picket Master Pro. *Id.* at ¶ 5. SCS has expended substantial time, energy, money, and resources into developing and promoting the PM Products. *Id.* at ¶ 7. Additionally, each PM Product is meticulously handcrafted from the highest quality materials by the Plaintiff ensuring top-notch quality and durability. *Id.* at ¶¶ 4, 9. As a result, the PM Products have become a staple in Plaintiff's own shop and many other shops all over the world. *Id.* at ¶ 4. The resulting recognition and goodwill associated with the PM Products and PM Copyrights is of incalculable and inestimable value to SCS. *Id.*

B. **Defendants' Unlawful Activities**

Significant infringement has stemmed from the success of PM Products. *Id*. at ¶ 10. As a result, SCS implemented an anti-infringement program that investigates suspicious ecommerce activity and online marketplace listings identified through proactive Internet sweeps. *Id*. SCS encountered numerous Defendant Internet Stores offering for sale, selling, and importing Infringing Products in connection with the PM Copyrights. *Id.* at ¶ 13. Defendants are not authorized by SCS to use the PM Copyrights. *Id*. at ¶ 12. Furthermore, Defendants operate legitimate-looking Internet stores which bear remarkable similarities, and utilize nearly-identical evasion techniques to conceal their identities and avoid enforcement efforts — utilizing online chat platforms and groups, and monitoring trademark infringement litigation alert websites — which all together establish a logical and interrelated relationship among the Defendants. *Id.* at ¶¶ 14-17.

The online marketplace accounts and product listings of Defendants are designed to facilitate

sales by giving the impression to consumers that they are authorized retailers featuring genuine PM Products. *Id.* at ¶ 14. The Defendant Internet Stores are designed to appear sophisticated and give the impression of authenticity. *Id.* They also share notable features which include the: Infringing Products offered; images of product listings; stores' layout and appearance; listing descriptions; naming conventions for store names, listing names and product titles; general absence of identifying or contact information; and similarly priced goods. *Id.* at ¶ 16.

Furthermore, Defendants frequently utilize evasive tactics to conceal their identities, including: 1) subscribing to and reviewing online chat platforms and groups; 2) monitoring copyright infringement litigation alert websites; 3) registering new online marketplace accounts under different aliases, abandoning accounts named in lawsuits; and 4) shipping infringing products in small quantities via international mail without a return address and/or using false information, thereby minimizing detection by U.S. Customs and Border Protection. *Id.* at ¶ 17.

Additionally, infringers such as Defendants, frequently operate multiple payment processor and merchant accounts, including but not limited to one or more financial accounts operated through e-commerce platforms and payment processors, hiding behind layers of payment gateways, thereby allowing them to persist in their illegal operation without detection, and despite Plaintiff's best enforcement efforts. *Id.* at ¶ 18. Upon information and belief, Defendants regularly move funds obtained by their infringement of Plaintiff's PM Copyrights, from the accounts associated with their online marketplaces — which are held by third-party payment providers — to offshore bank accounts, which fall outside the jurisdiction of this Court. *Id.*

### III.  ARGUMENT

Defendants' purposeful and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff. Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where (1) facts show that the movant will suffer immediate

and irreparable injury, loss, or damage before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b) . The facts in this case warrant such relief. *See* Carter Decl. at ¶ 3. Entry of a TRO is appropriate, as it would prevent ongoing injury to Plaintiff stemming from Defendants' wrongful use of the PM Copyrights and preserve the status quo until such time as a hearing can be held.

In the absence of an *ex parte* TRO, Defendants likely will register new online marketplace accounts under new aliases, modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts to offshore bank accounts, outside the jurisdiction of this Court. Spencer Decl. at ¶ 18. In discussing *ex parte* seizures, Congress noted "[t]estimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic . . ."[1] Furthermore, the policy purpose of an *ex parte* TRO in trademark counterfeiting matters is to "provide victims…a means of ensuring that the courts are able to exercise their jurisdiction effectively…" *Id.* The same should apply in cases of copyright infringement. In fact, this Court has recognized "that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis". *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over these claims pursuant to the Federal

---

[1] *See* U.S. Attorneys Manual § 1711 (Joint Statement — Part G. *Ex Parte* Seizures), available at justice.gov/usam/criminal-resource-manual-1711-joint-statement-part-g-exparte-seizures (last accessed October 21, 2025).

Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391. Personal jurisdiction is proper as Defendants directly target business activities toward consumers in this Judicial District by operating the Defendant Internet Stores, which directly offer for sale, and provide a platform through which Illinois residents purchase, the Infringing Products. *See Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each Defendant is committing tortious acts, engaging in interstate commerce, and wrongfully causing SCS substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

The standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and, (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these conditions have been met, it must consider the harm the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if denied relief. *Id.* Finally, the Court must consider the potential effect on the public interest in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when deciding whether to grant the injunction. *Id.* This process involves engaging in what the Court has deemed "the sliding scale approach" — the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

#### i. Plaintiff Will Likely Succeed on the Merits.

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements:

5

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). *see, also, S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir.1989) ("The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights...."). Because the validity of Plaintiff's copyrights are not in dispute, the only factor at issue in this case is whether Defendants violated at least one exclusive right granted to Plaintiffs as copyright holders. *Warner Bros. Entertainment Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003, 1008 (C.D. Cal. 2011). Pursuant to 17 U.S.C. § 106, a copyright holder has the exclusive rights to do and to authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Moreover, copyright protection extends to "derivative works," or "work[s] based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff is the owner of the PM Copyrights. Spencer Decl. at ¶ 5. Defendants have never been authorized by Plaintiff to reproduce or distribute the Plaintiff's copyrighted creative works. Spencer Decl. at ¶ 12. Defendants infringe upon the PM Copyrights by reproducing, massively distributing, and publicly displaying the creative content protected by the PM Copyrights in connection with the offering for sale and sale of the Infringing Products. *Id.* at ¶ 13. Therefore, Plaintiff has satisfied the burden of proving both elements required to establish copyright infringement: (1) Plaintiff has ownership of a valid

6

copyright; and, (2) copying of constituent elements of the work that are original are proven in the evidence submitted as Exhibits 1 and 2 to the Spencer Decl. As such, the infringement is clear on its face and establishes that Plaintiff is likely to succeed on the merits.

        ii.    <u>There is no Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief</u>

It is well established in the Seventh Circuit that "the loss of goodwill and reputation, if proven, can constitute irreparable harm" in cases alleging copyright infringement. *Collectanea J. v. The P'ships, et al.*, No. 24-cv-03821, Dkt. [120] (N.D. Ill. 29 Oct. 24) (unpublished) (citing *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021)); *see also Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) and *Eli Lilly & Co. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). "The most corrosive and irreparable harm attributable to [an intellectual property] infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the PM Copyrights has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Spencer Decl. at ¶¶ 20-24. The extent of such harm, and the possible diversion of customers due to loss of brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Furthermore, Defendants' intentional copyright infringements deprive Plaintiff of the ability to control the creative content protected by the PM Copyrights; devalues the PM Products by associating it with inferior quality

goods; and, undermines the value of the PM Copyrights by creating the impression that infringement may be undertaken with impunity thereby threatening Plaintiff's ability to develop further licensees. Spencer Decl. at ¶¶ 22-24. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of [Defendant's] likely inability to pay for the past and/or future infringements that it has induced. Additionally, [Defendant's] inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business). Accordingly, Plaintiff has satisfied the Seventh Circuit Court's standard for granting preliminary relief by establishing that there is no adequate remedy at law and that Plaintiff will continue to suffer irreparable harm in the absence of such relief.

### iii. The Balancing of Harms Tips in Plaintiff's Favor

Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted. The Court must next consider the potential harm that Defendants could suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the [intellectual property] owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D. D.C. 1994). This is because "[o]ne who adopts the [intellectual property] of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright

8

context, as it is in the trademark context, since Defendants similarly "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't, Inc.* v. *WTV Sys.,* 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011). Therefore, the balancing of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's [intellectual property]." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D. D.C. 1996). As Defendants are knowingly and intentionally using SCS' protected PM Copyrights, in order to profit from sales of Infringing Products, the balance of equities must tip decisively in Plaintiff's favor. Consequently, equity requires Defendants be ordered to cease their unlawful conduct.

iv. <u>Issuance of the Injunction is in the Public Interest</u>

It is well established that intellectual property laws "are concerned not alone with the protection of a property right existing in an individual, but also for the protection of the public from fraud and deceit." *Stahfy, Inc.* v. *M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). Defendants are attempting to deceive consumers through their infringing activity. As a result, consumers may purchase inauthentic and Infringing Products without their knowledge. Frequently such products are of low quality and may be dangerous as there is no oversight into Defendants' manufacturing process. This threat to consumers, along with the likelihood that consumers associate these Infringing Products with the Plaintiff, make injunctive relief necessary. Such relief is intended to dispel public confusion and protect consumers from deceit, and is in the interest of public safety.

**IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

In addition to this Court's inherent authority to issue injunctive relief, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. The facts in this case warrant such relief. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind third parties, including

9

online marketplaces and financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65(d)(2)(C).

As discussed *supra*, Defendants' infringing activity is continuous and causes significant harm to Plaintiff with each passing day. Injunctive relief is necessary in order to curb this harm. Specifically, Plaintiff is requesting temporary injunctive relief which orders: (1) the immediate cessation of all unauthorized use of the PM Copyrights on or in connection with any products listed on all Defendant Internet Stores; (2) a restraint of funds in the Defendant Internet Stores' associated financial accounts held by online marketplaces and payment processors; and (3) expedited discovery such that Plaintiff can determine the true identities behind the Defendant Internet Stores which will allow Plaintiff to provide notice to the Defendants of these proceedings.

### A. Cessation of Defendants' Use of Plaintiff's Copyrights

The harm Plaintiff is incurring and would continue to incur from the Infringing Product listings remaining active until such time as Defendants can be heard is significant. As previously stated, those injuries include diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, loss of future sales, and loss of control over the content and products protected by the PM Copyrights. Not only would there be a continued quantifiable injury in terms of lost profits and loss of future sales, but there is an unquantifiable portion that will have long-lasting effects. There is no way to tell just how many consumers are visiting the Defendant Internet Stores each day, and every visit negatively impacts those unquantifiable injuries. The need for *ex parte* relief is magnified in today's global economy, where counterfeiters and IP infringers easily and anonymously operate over the Internet causing unknown amounts of damage. It is well-established in this Court that injunctive relief ordering the Defendants to cease use of Plaintiff's intellectual property is appropriate. *See, e.g., Madison Olsen v. The P'ships, et al*, No. 1:25-cv-06084, Dkt. [21] (N.D. Ill.) (Jul. 21, 2025) (unpublished); *Ziggy Zig Designs LLC v. The P'ships, et al.*, No. 1:24-cv-00908, Dkt. [23] (N.D. Ill.) (Mar. 28, 2025)

10

(unpublished). As such, Plaintiff's request for *ex parte* relief ordering the removal of the Defendant Internet Stores' Infringing Products and immediate cessation of all use of Plaintiff's PM Copyrights is proper.

      **B.**     **Restraint of Assets Associated with the Defendant Internet Stores**

Plaintiff requests an *ex parte* restraint of Defendants' funds which are closely linked to the Defendant Internet Stores' infringing activity. Specifically, Plaintiff requests that the online marketplace and payment processors associated with the Defendant Internet Stores, through which consumers purchase the Infringing Products, and which hold those ill-gotten profits on behalf of the Defendants, be frozen. The reason for such a request is two-fold: (1) so that Defendants are unable to move the funds associated with sales of Infringing Products to jurisdictions outside of the reach of this Court; and (2) so Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. In Plaintiff's counsel's experience, if such a restraint is not granted, and Defendants are permitted to be heard prior to the effectuation of any injunctive relief, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Carter Decl. at ¶ 5.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright infringement claim and Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought.

The Northern District of Illinois, in *Lorillard Tobacco Co. v. Montrose Wholesale Candies,* entered an asset restraining order in an intellectual property infringement case brought by a tobacco

11

company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). As the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Because Plaintiff seeks disgorgement of Defendant's profits, an equitable remedy, and Defendants' enterprise is devoted to a fraudulent purpose made profitable by the infringing use of Plaintiff's federally registered copyrights, the Court has the authority to freeze all U.S. based assets related to the fraudulent enterprise. *Id.* (citing *Deckert v. Independence Shares Corp.,* 311 U.S. 282 (1940)); *see also CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th Cir. 2002) ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."). Therefore, Plaintiff's request for an asset restraint related to Defendants' infringement is proper.

### C. Expedited Discovery to Obtain Defendants' Contact Information and Sales Data

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Additionally, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to order any third-party, in active concert with the Defendants, to provide expedited discovery in an action once notice of the order is given. *Id*.

Plaintiff respectfully requests expedited discovery, specifically of the online marketplaces and

12

payment processors associated with the Defendant Internet Stores, to discover: (1) the financial accounts Defendants use for their operations; and (2) Defendants' registration information and sales data related to the Infringing Products. Plaintiff requests discovery as to the financial accounts of the Defendants in order to be able to inform the online marketplaces and payment processors associated with the Defendant Internet Stores to implement an asset restraint over those accounts. Discovery of these accounts, so they can be frozen, is necessary to ensure Defendants' activities are contained. *See, e.g., Decker's Outdoor Corporation v. The Partnerships, et al.*, No. 1:15-cv-03249, Dkt. [20] (N.D. Ill.) (April 22, 2015) (unpublished). Additionally, Plaintiff requests discovery of the Defendants' contact information so that Plaintiff may serve the Defendants and put them on notice of this action.[2] Lastly, Plaintiff requests the sales and transaction data related to the Defendant Internet Stores in order to determine the extent of the infringement associated with the PM Copyrights. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's request for expedited discovery.

The request in Plaintiff's proposed TRO is limited to include only what is necessary to prevent further irreparable harm and to redress its injury. As such, Plaintiff respectfully requests entry of an *ex parte* temporary restraining order against the Defendants.

**V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See Ziggy Zig Designs LLC v. The P'ships, et al.*, No. 1:24-00908, Dkts. [23] (N.D. Ill.) (Mar. 28, 2024) (Where this Court held that a bond of Ten Thousand U.S. Dollars ($10,000) was

---

[2] Plaintiff has concurrently filed its Motion for Electronic Service of Process. Obtaining contact information through expedited discovery is necessary in order for service to be effectuated on the Defendants.

"adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint" in a matter with over four hundred (400) defendants); *see also Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI. CONCLUSION

Defendants' infringement is significantly injuring and irreparably harming SCS' business, consumers, and the general public. In view of the foregoing, and consistent with previous analogous cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order against Defendants.

Dated: October 22, 2025

Respectfully submitted,

*/s/ John J. Mariane*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
j.mariane@scip.law

***ATTORNEYS FOR PLAINTIFF***