UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALT CITY STEEL LLC,<br><br>PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>DEFENDANTS. | CASE NO.: 1: 25-CV-12712<br><br>JUDGE ANDREA R. WOOD<br><br>MAGISTRATE MARIA VALDEZ |

**PLAINTIFF'S REPLY TO DEFENDANT 321. ACSSART**

Plaintiff, Salt City Steel LLC ("SCS" or "Plaintiff"), through its counsel, hereby submits the following reply in response to the Defendant's Opposition to Plaintiff's *Ex Parte* Motion to Extend the Temporary Restraining Order [28] and Defendant's Supplement in Further Opposition to Plaintiff's *Ex Parte* Motion to Extend the Temporary Restraining Order [32], filed by Defendant No. 321. Acssart.com (hereinafter "Defendant" or "acssart.com").

1. **Plaintiff has shown irreparable harm and the injunctive relief granted in the TRO is necessary and appropriate.**

To obtain a temporary restraining order pursuant to Federal Rule of Civil Procedure 65, a plaintiff "must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotation marks and citation omitted). Once a plaintiff has established those requirements, then the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Id.* (internal quotation marks and citation omitted). In the Seventh

1

Circuit, courts employ a "sliding-scale approach": the more likely a plaintiff is to prevail on the merits, the less the balance of harms must weigh in [the opposing party's] favor; correspondingly, the less likely a plaintiff is to prevail the more the balance must weigh in [opposing party's] favor." *Id.*; *see also, Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

The standard for dissolving an injunction are the same as those for granting or denying one. *Centurion Reinsurance Co. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987). The court asks whether "the expected cost of dissolving the injunction-considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error [is] greater or less than the expected cost of not dissolving the injunction." *Id.* "If greater, the injunction should not be dissolved; if less, it should be." *Id.*

In the present case, Plaintiff faces irreparable harm from the Defendant in the absence of injunctive relief regardless of whether the infringing product listings have been taken down. The Defendant has not yet complied with the terms of the Temporary Restraining Order ("TRO"), which requires each defendant to "serve upon Plaintiff a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate, (c) their financial accounts, including all financial accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through g, above." [22] at ¶ 2. This is likely a strategic decision by the Defendant, especially given the questionable actions the Defendant has taken since being on notice of this lawsuit as discussed *infra*. Without this information from the Defendant, Plaintiff cannot determine the extent of the infringement nor the profits the Defendant actually obtained through the use of its intellectual property.

In support of its motion for TRO, Plaintiff detailed how it would suffer immediate and irreparable

2

harm, absent a granting of a TRO. [9] at pp. 4-5, 8-10. In particular, Defendant would likely register new online marketplace accounts under new aliases, modify registration data and content, change hosts, and move any assets outside the jurisdiction of this Court. *Id.* at p. 5. In fact, much of this the Defendant has already started to do, including changing its store to a new host/server, modifying or adding addresses on the webpage from New Jersey to Washington, changing the business name of its store – all, presumably, in anticipation of the restraints on its financial accounts being lifted so it can drain its accounts and evade this action. *See*, submitted herewith, the Declaration of Ann Marie Sullivan (hereinafter referred to as "Sullivan Decl.") at ¶¶ 7, 11, 25. Additionally, Defendant has created a web of stores and businesses, some of which have been disclosed by PayPal, and others of which Plaintiff discovered through its own investigative efforts. *Id* at ¶ 16.

Furthermore, Plaintiff continues to suffer irreparable harm because it has invested substantial time, effort and money into creating the copyrighted works and, absent relief, it likely will not realize a return on that investment due to Defendant's infringement of the copyrights. There is no way to measure the diminution in value on Plaintiff's marketing efforts, which Defendant may have benefited from to Plaintiff's detriment. *See generally, Aidong Zou v. The entities and Individuals Identified in Annex A*, (Northern Dist. Ill.) Case No.: 23-cv-16600 (Judge Kendall) (denying defendant's motion to set aside the preliminary injunction or to amend the asset freeze in a copyright infringement case).

In applying the "sliding-scale" approach to the present case, it is clear that the balancing of harms weighs greatly in Plaintiff's favor as the consequences of erroneously dissolving the injunction is to leave Plaintiff with no remedy or recourse for the harm it is incurring.

2. **Defendant's websites, Defendant's Declaration, and other publicly available information demonstrate conflicting information about Defendant's business name and address.**

After conducting its reasonable due diligence, Plaintiff determined that Defendant is not based in the United States. *See generally,* the Sullivan Decl. As a part of the due diligence conducted prior to filing

this lawsuit, Plaintiff was able to identify multiple business names, addresses, emails, store names, and other contact information, related to Defendant. Defendant's Declaration attached to its Supplement in Further Opposition to Plaintiff's Ex Parte Motion to Extend the Temporary Restraining Order states "Acssart has a place of business in New Jersey." [32-01] at ¶ 3. However, the New Jersey address is a warehouse, not a business address or registered agent address, and a search of their current website returns conflicting results regarding the Defendant's actual location. For example, in multiple places on Defendant's website, it states that the Terms and Conditions of acssart.com are "governed under the *local* laws of UK." See Sullivan Decl. at ¶¶ 4-6. Additionally, also on Defendant's website, there are several different business addresses listed in: Washington, New Jersey, the United Kingdom, and Hong Kong. *Id.* at ¶¶ 7, 9, 10. In response to Plaintiff's subpoena, PayPal provided an additional three (3) addresses – and an additional URL of another ecommerce store operated by Defendant – all of which are based in China. *Id.* at ¶ 15. Notably, none of those addresses provided or obtained match the return address on the shipping packaging of either of the infringing products received by Plaintiff from its purchases through acssart.com. *Id.* at ¶ 13.

Furthermore, Defendant operates under multiple different aliases. Defendant's website provides various different business names, under which it is operating – for example: NewChic, CRAFTYMART INC, and SWIFT LH MARKET LTD, while the confirmation of purchase email received from Defendant lists its business name as "Sadensk Inc." *Id*. at ¶¶ 7, 11, 12. In response to Plaintiff's subpoena, PayPal also provided nine (9) additional business names under which Defendant operates. *Id.* at ¶ 16.

3. **Defendant has not provided the complete information ordered by this Court.**

The sales information Defendant provided is incomplete. Defendant's Declaration says there was $127.92 in total revenue; however, this figure excludes Plaintiff's two purchases of infringing products, which should not be omitted from the total sales figure, and which would amount to a total of $192.87 in revenue – as demonstrated in Defendant's own Exhibit A. [32-02]. Furthermore, Defendant only provided sales information for one store (m.acssart.com), and did not provide any sales information for the various

other stores operated by Defendant (including, for example, acssart.com) nor has it disclosed any information related to its other stores and/or businesses.

Plaintiff faces a serious risk, absent the relief granted in the TRO, which is reflected in the TRO entered by this Court, as "Defendant[] could and likely would modify registration data and content, change hosts, redirect traffic to other website in their control . . ." *See* [22] at p. 2. Again, to demonstrate how real this risk is – Defendant has already changed hosts since the filing of this lawsuit – as Defendant's ecommerce store was hosted by Shopify at the time of filing, and in response to Plaintiff's subpoena, Shopify informed Plaintiff that it no longer hosts Defendant's website. *See* Sullivan Decl. at ¶ 25. Additionally, Defendant has not complied with this Court's order – namely, paragraph 2 of the TRO, which ordered Defendant to "serve upon Plaintiff a written report under oath providing: (a) their true name and physical address." [22] at ¶ 2.

4. **Plaintiff faces ongoing harm absent the relief granted in the TRO, and the asset restraint – or at least a reasonable modification thereof – should remain in place.**

Defendant argues that the asset restraint which is currently in place should be lifted because its infringement of Plaintiff's copyrighted images began prior to the registration date of Plaintiff's copyrights. However, the asset restraint granted in this case is necessary to not only protect a genuine claim for equitable monetary relief but also to maintain the status quo until full adjudication of the case.

As mentioned *supra*, Defendant has failed to divulge the full scope and extent of its infringement, despite repeated attempts to seek that information by the Plaintiff, which is in direct violation of the Temporary Restraining Order entered by this Court. [22]. Specifically, the Defendant has yet to disclose relevant information regarding the full scope of sales and listing history related to their infringing activity, along with information related to the additional ecommerce stores operated by the Defendant, and any sales made thereon. Given that Defendant operates more than one ecommerce store, information for which it is refusing to disclose, and is potentially engaging in a large-scale counterfeiting operation and

5

that Plaintiff has not yet been able to determine the full extent of infringement by the Defendant, Plaintiff contends that the asset restraint currently in place remains necessary and appropriate. Furthermore, without the asset restraint in place, the Defendant will likely move its assets from any financial accounts, and evade the action entirely – which would leave Plaintiff without recourse. As such, Plaintiff asserts that the asset restraint is necessary in order to preserve the status quo.

Plaintiff notes that it is amenable to a modification of the asset restraint, after having the opportunity to conduct discovery with Defendant (assuming its compliance), and is able to obtain accurate and complete information as to sales of infringing products made by the Defendant across all stores operated by Defendant. Defendant should be required to provide full discovery, in compliance with ¶ 2 of the Temporary Restraining Order issued by this Court in [22], before the Court can make a ruling on the breadth of the asset restraint.

### 5. Plaintiff did not delay in bringing suit.

Defendant claims that "Plaintiff has not provided any evidence of irreparable harm" and "Plaintiff has had actual knowledge of Defendant for at least four months before seeking relief." [28] at p. 2. Defendant also argues "In all events, Plaintiff's delay in bringing suit against Defendant negates any argument of irreparable harm." [28] at p. 7. However, four months after knowledge of infringement is not a delay, as prior to filing any lawsuit, Plaintiff's counsel conducts an extensive review process, investigating all defendants, individually and collectively (which Defendant also ironically asserts that Plaintiff did not do). This process is extensive, involves internet searches, browsing the website of the defendant, checking business registrations, conducting multiple test purchases of infringing products, researching accounts that may be associated with Defendants, attempting to secure an email address and physical address for Defendants, and so on. Conducting due diligence and preparing for a lawsuit is not an inexcusable delay.

**6. Plaintiff has satisfied its requirement of proving proper joinder as to Defendant.**

For purposes of joinder, Plaintiff has adequate evidence to suggest that Defendant is related to other defendants in the present case. This evidence was provided to the Court in Plaintiff's Supplemental Joinder Memorandum, which was accepted by the Court. [17]. Additionally, while there are multiple commonalities linking this Defendant to others, the strongest link is the physical purchases received by Plaintiff. Both purchases received by Plaintiff reflect different return names and addresses, in a pattern common to many defendants – namely, a short first name (as opposed to the store name or a distribution center name), and the return address of a fulfillment center. *See* Sullivan Decl. at ¶¶ 20-22. Additionally, Defendant also uses the same unique and identical language in the main listing title as many other defendants. *Id*. at ¶ 23. Further evidence of proper joinder has already been submitted and considered by this Court. [17].

Defendant argues that it should be dismissed from the action for misjoinder. However, according to the Federal Rules, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Furthermore, district courts are given wide discretion when deciding the joinder of parties. *Chavez v. IL State Police,* 251 F.3d 612, 632 (7th Cir. 2001). See, *Aidong Zou v. The entities and Individuals Identified in Annex A*, (Northern Dist. Ill.) Case No.: 23-cv-16600 (Judge Kendall) (denying defendant's motion to sever for misjoinder in a case of 149 defendants as Plaintiff's well-pleaded allegations satisfied Rule 20(a)(2)(A)). As such, the Court has not abused its discretion in joining the Defendant, and because misjoinder is not a grounds for dismissal, Plaintiff respectfully requests the Court to disregard this argument from the Defendant. Should the Court find Defendant's argument compelling, Plaintiff submits that severing the case as to the Defendant is the appropriate remedy.

For the foregoing reasons, Plaintiff respectfully requests that the Extension of the Temporary Restraining Order be granted against the Defendant.

Dated: January 22, 2026    Respectfully submitted,

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd., Ste. 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
am.sullivan@scip.law

***ATTORNEYS FOR PLAINTIFF***